# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY WALTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 1:18-cv-1176-JDT-cgc |
| | ) | |
| NURSE PRACTIONER DOAKS-ROBERTSON, ET AL., | ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DISMISSING COMPLAINT, CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On September 12, 2018, Plaintiff Jeffrey Walton, who is incarcerated at the Whiteville Correctional Facility (WCF) in Whiteville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The Court issued an order the same day, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as Nurse Practitioner First Name Unknown (FNU) Doaks-Robertson (Nurse Robertson); Jeaneatte Joy; Nurse FNU McCalvin; Grievance Chairman FNU Jones; Assistant Warden FNU Walker; WCF Warden Arvil Chapman; David Sexton, Tennessee Department of Correction (TDOC) Assistant Commissioner of Prisons; and Tony Parker, TDOC Commissioner.

Walton alleges that he has preexisting, permanent injuries that make walking difficult. (ECF No. 1-1 at PageID 11, 13.) Because of his injuries, he was granted various medical

restrictions which included an assignment to bottom tier, bottom bunk housing at WCF. (*Id.* at PageID 11, 15.) Walton alleges that on April 17, 2017, Defendant Nurse Robertson intentionally removed all of Walton's medical restrictions, except for the bottom bunk assignment, because Walton had filed grievances against her in February and April 2013. (*Id.* at PageID 8-9.) Walton, however, did not learn that his medical restrictions had been removed until December 6, 2017, when he received a copy of his health assessment and was assigned to an upper-tier cell accessible only by climbing steps. (*Id.* at PageID 9.)[1]

Walton alleges that, after filing his grievances in 2013, Nurse Robertson "started to display an overall demeanor of hatred, resentfulness, and vengence [sic] towards" Walton. (*Id.* at PageID 10.) He alleges that Nurse Robertson's demeanor deterred him from filing further grievances because he was afraid she would make decisions that "could lead to substantial permanent serious bodily injury." (*Id.*) Walton did not file any more grievances against Nurse Robertson until December 25, 2017, after he learned his medical restrictions had been removed. (*Id.* at PageID 14.) Since then, Walton alleges Nurse Robertson has acted "even more hateful and resentful" towards him and has "fabricated and falsified medical records relating to Plaintiff." (*Id.*) Walton alleges that his pain has worsened from having to use the steps to access the upper tier for about three months "from 12-6-17 to around 2-3-18." (*Id.* at PageID 12, 14, 37.) In February 2018, Walton was reassigned to the bottom tier, but he alleges he has not further grieved Nurse Robertson because he is afraid he will be "placed back on the top tier." (*Id.* at PageID 37-38.)

---

[1] Walton also alleges that he was assigned to a top bunk, which he contends puts him further at risk because there are no ladders to access the top bunk, so he must jump to reach his bunk from the floor and vice-versa. (ECF No. 1-1 at PageID 13.) Walton, however, alleges only that his injuries have worsened because of having to climb up and down the steps to his cell on the upper tier. He alleges no actual injury due to a top bunk assignment; instead, he alleges only a risk of additional future injury. (*Id.* at PageID 12-13.)

2

Walton alleges that Defendant Joy conspired with Nurse Robertson to remove his medical restrictions when Joy approved Robertson's allegedly fabricated health assessment of Walton. (*Id.* at PageID 19-20.) Walton alleges that, because Joy approved Robertson's falsified assessment, Walton was given the top bunk housing assignment. (*Id.* at PageID 20.) Walton also alleges that Joy intentionally forced Walton to engage in rehabilitative exercises despite knowing his injuries would not improve and would instead worsen from the movement. (*Id.* at PageID 21.)

Walton alleges that he saw Defendant Nurse McCalvin several times while trying to reinstate his medical restrictions. (*Id.* at PageID 22.) He alleges McCalvin made him complete needless paperwork to obtain his medical records from outside agencies to prove his disability, even though paperwork attesting as much was already in his prison medical records; however, McCalvin allegedly never sent out the paperwork to actually obtain the records. (*Id.* at PageID 22-23.) Walton alleges McCalvin was acting to further the conspiracy with Robertson and Joy to deprive Walton of bottom tier, bottom bunk housing and worsen his injuries. (*Id.* at PageID 23.)

Walton further alleges that Grievance Chairman Jones denied Walton full access to the grievance procedures at WCF by deeming Walton's grievances "inappropriate." (*Id.* at PageID 25.) Walton alleges that Jones retaliated against him for grieving Nurse Robertson, and in furtherance of the alleged conspiracy with the other Defendants, by denying Walton a hearing for his grievance and "fabricating the appeal process." (*Id.* at PageID 26-28.)

Walton alleges that Warden Chapman wrongly agreed with Defendant Joy that Walton's grievance was inappropriate under TDOC policy. (*Id.* at PageID 29.) Walton asserts that Warden Chapman therefore wrongly denied Walton a grievance hearing and must have been conspiring with the other Defendants. (*Id.* at PageID 29-30.) Walton accuses Warden Chapman, Assistant Warden Walker, and Assistant Commissioner Sexton of "rubber stamping" his grievances and

asserts that they should have conducted their own investigations. (*Id.* at PageID 31-32, 36.) Walton also alleges that Commissioner Parker failed to answer his grievances and that, because Parker did not sign the grievance, "the entire grievance was never properly processed." (*Id.* at PageID 33.)

Walton seeks $750,000 each in punitive and compensatory damages. (ECF No. 1 at PageID 5.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Walton filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Although Walton ostensibly also sues under 42 U.S.C. §§ 1981 and 1985, he does not assert any valid claims under those statutes. Under § 1981:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

5

42 U.S.C. § 1981(a). The statute thus "prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). Walton does not allege that the Defendants interfered with his right to make or enforce a contract on account of his race. Therefore, the complaint fails to state a claim under § 1981.

Walton also purports to assert claims under 42 U.S.C. § 1985, though he does not specify the paragraph under which he brings his claims. Section 1985(1) "prohibits interference with officers in the performance of their duties." *Warner v. Greenebaum, Doll & McDonald*, 104 F. App'x 493, 497 (6th Cir. 2004). That paragraph is not relevant here. Section 1985(2) contains two separate clauses separated by a semi-colon. The first "forbids a conspiracy to deter a party or witness in a federal court from attending or testifying in court, punishing parties or witnesses for having attended or testified in federal court, or influencing or punishing federal jurors." *Id.* Walton does not allege that the Defendants attempted to deter him from attending or testifying in any federal court. The second clause, which "applies to conspiracies to obstruct the course of justice in state courts," *Bragg v. Madison*, 20 F. App'x 278, 285 (6th Cir. 2001) (citing *Kush v. Rutledge*, 460 U.S. 719, 725 (1983)), also is not applicable to Walton's claims.

Section 1985(3) "applies to conspiracies for the purpose of depriving, directly or indirectly, a person . . . of the equal protection of the laws." *Bragg*, 20 F. App'x at 285 (internal citation omitted). To state a claim under § 1985(3), Walton "must demonstrate that there was 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Kush*, 460 U.S. at 726); *see also Vakilian v. Shaw*, 335 F.3d 509, 519 (6th Cir. 2003) (quoting *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994)) (noting that "[a] class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender"). Walton alleges that the

Defendants conspired against him "because of a previous grievance filed against other defendants at WCF Prison" and not for any class-based reason. (ECF No. 1-1 at PageID 42.) He therefore does not state a claim under § 1985(3).

Turning to Walton's claims under § 1983, Walton asserts that he sues the Defendants "in their individual and/or official capacities, whichever one is appropriate." (ECF No. 1-1 at PageID 34.) The Sixth Circuit requires a plaintiff to "set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials." *Wells*, 891 F.2d at 592. Usually, "[a]bsent a specification of capacity, it is presumed that a state official is sued in his official capacity." *Northcott v. Plunkett*, 42 F. App'x 795, 796 (6th Cir. 2002) (citing *Wells*, 891 F.2d at 593). However, Walton names only individual Defendants in his complaint and asserts that "[e]ach separate defendant was <u>directly responsible</u> for Plaintiff's injuries"; that he "suffered serious bodily injuries because of each defendant's own actions"; and that "[t]hrough their own actions, each defendant violated Plaintiff's constitutional rights." (*Id.* at PageID 35 (emphasis in original).) Walton also seeks only damages in relief. (ECF No. 1 at PageID 5.) The Court therefore presumes that Walton intends to sue the Defendants in their individual capacities and will analyze his claims accordingly.

*Deliberate Indifference*

Walton alleges that the Defendants knew of his preexisting injuries but denied him a lower-tier housing assignment. He alleges that, because he has had to use the steps, his injuries have worsened. Walton's allegations amount to a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition of cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component,

a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson v. Seiter*, 501 U.S. 294, 297, 302-03 (1991). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837-38.

Walton's allegations that for three months he had been forced to use the steps to access his cell fail to meet the objective component of an Eighth Amendment claim. *See Anderson v. Co Officer Fletcher*, No. 2:15-CV-2439-JDT-TMP, 2016 WL 4074485, at *5 (W.D. Tenn. July 29, 2016) ("Having to go up the stairs, even with some physical limitations, does not meet the objective component of cruel and usual punishment."). Neither does the removal of Walton's other medical restrictions. A prison medical provider's determination that a medical restriction is not needed does not constitute "'deliberate indifference to serious medical needs' which creates an Eight Amendment violation." *Tate v. Campbell*, 85 F. App'x 413, 418 (6th Cir. 2003) (citing *Estelle*, 429 U.S. at 105-06). Likewise, Defendant Joy's review of Walton's medical records and her concurrence with Nurse Robertson's assessment of his limitations, (*id.* at PageID 47), does not rise to the level of deliberate indifference. *See Anderson*, 2016 WL 4074485, at *5 (citing *Robbins v. Black*, 351 F. App'x 58, 63 (6th Cir. 2009) (concluding that medical staff's determination that bottom floor, bottom bunk was not required, and following of prison policy to that effect, did not show deliberate indifferent to prisoner's medical needs).

Nor does Walton state an Eighth Amendment claim against the other, non-medical Defendants. "Non-medical staff are entitled to assume that members of the medical staff are performing their duties properly unless they have reason to know otherwise." *Robbins*, 351 F. App'x at 63 (citing *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1248-50 (6th Cir. 1989)). Walton's conclusory assertions of a conspiracy aside, he alleges no facts showing that Defendants Jones, Walker, Chapman, Sexton, or Parker had reason to know that his medical assessment was incorrect and deliberately disregarded a serious risk to his health or safety.

*Retaliation*

Walton asserts that Defendant Robertson retaliated against him for filing grievances in February and April 2013 by removing his medical restrictions four years later, in April 2017. The Court reviews Plaintiff's retaliation claim under the First Amendment. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution."). A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391. "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Walton has a right to file non-frivolous grievances, and retaliation against him for filing them would constitute a constitutional violation. *See Hill*, 630 F.3d at 472. Walton alleges that in retaliation for his earlier grievances, Nurse Robertson's demeanor became hateful and resentful towards him, which deterred him from filing further grievances against her until his housing change in December 2017. Walton does not allege, however, that Nurse Robertson threatened him, harassed him, punished him, or otherwise took any adverse *action* against him. *See Thaddeus-X*, 175 F.3d at 398 (noting that harassment and physical threats "would likely have a strong deterrent effect").

The only adverse action Walton alleges is the removal of his medical restrictions four years after he filed grievances against Nurse Robertson. Walton does not allege he was deterred from grieving the removal of his medical restrictions, and in fact he grieved that action immediately after learning about it. This inquiry, however, is objective, and the "removal of previously ordered medical accommodations is likely to chill a person of ordinary firmness from engaging in the protected conduct." *Burley v. Abdellatif*, No. 16-CV-12256, 2018 WL 3300315, at *9 (E.D. Mich. Jan. 26, 2018) (citing *Smith v. Yarrow*, 78 F. App'x 529, 540 (6th Cir. 2003)), *report and recommendation adopted*, No. 16-12256, 2018 WL 1384235 (E.D. Mich. Mar. 19, 2018).

Even assuming the removal of Walton's medical restrictions qualifies as an adverse action, however, Walton fails to show a causal connection between that action and his grievances from four years earlier. Temporal proximity between protected conduct and adverse acts, when close enough in time, may "creat[e] an inference of retaliatory motive." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). The passing of four years, however, is too long to assume a causal connection without other factual support. *See, e.g.*, *Johnson v. Cargill, Inc.*, 932 F. Supp. 2d 872, 891 (W.D. Tenn. 2013) (concluding that passing of almost twenty months between Plaintiff's protected

10

conduct and adverse action "is far too long to warrant an inference of causation on the basis of temporal proximity alone"). Walton provides no other facts to suggest Nurse Robertson acted in retaliation for his earlier grievances. "A plaintiff's conclusory allegations are insufficient to show that the defendant was motivated by the exercise of his First Amendment rights." *El-Shabazz v. Shands*, 23 F. App'x 402, 405 (6th Cir. 2001) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)). Walton cannot therefore connect Nurse Robertson's actions to his protected conduct four years earlier and fails to state a claim of retaliation.

*Grievance Process*

Walton asserts that Defendants Jones, Walker, Chapman, Sexton, and Parker denied his right to procedural due process by approving Defendant Joy's conclusions regarding his grievances against Defendant Robertson, not granting him a hearing for his grievance, and "fabricating the appeal process." None of these allegations state a claim. "There is no inherent constitutional right to an effective prison grievance procedure." *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). A § 1983 claim therefore cannot be premised on contentions that the grievance procedure was ineffective, unfair, or inadequate. *Id.*; *see Lewellen v. Metro. Gov't of Nashville and Davidson Cnty.*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate."). Nor is there a "constitutionally protected due process right to unfettered access to prison grievance procedures." *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). Walton therefore is not entitled to relief on his claim that the Defendants denied him a hearing for, or "fabricated" the appeal from, his grievance. *Id.*

*Conspiracy*

Walton alleges that each Defendant conspired with one another to deny him a lower-tier housing assignment and worsen his injuries. A plaintiff may plead a conspiracy claim under § 1983, but he must do so with specificity. *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). "[V]ague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Id.* (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). This pleading standard for a claim of civil conspiracy is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). "To prevail on such a claim, a plaintiff must show that there is 'an agreement between two or more persons to injure another by unlawful action.'" *Sango v. Place*, No. 16-2095, 2016 WL 9413659, at *2 (6th Cir. Dec. 21, 2016) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)). The plaintiff must show "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Id.* (quoting *Robertson*, 753 F.3d at 622).

Walton's claim fails this standard. Although he generally alleges that each Defendant in some way agreed with one another to remove his medical restrictions and affect his housing assignment, he offers no factual support for his allegations and merely concludes that there was a conspiracy in play. The fact that other employees within WCF relied on Nurse Robertson's medical assessment to inform their decisions, whether the assessment was correct or not, demonstrates a routine bureaucratic operation and not a conspiracy to cause him injury.

For all of the foregoing reasons, Walton's complaint is subject to dismissal in its entirety for failing to state a claim on which relief may be granted.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that . . . amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that leave to further amend is not warranted.

In conclusion, the Court DISMISSES Walton's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is DENIED.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Walton in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Walton nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, §§ 1915(a)-(b). Therefore, Walton is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in the PLRA and *McGore* by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Walton, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This strike shall take effect when judgment is entered. *See Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

IT IS SO ORDERED.

  s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE